# WHEELING.

## BANK v. LOAR.

Submitted January 15, 1902.    Decided June 10, 1902.

1. DEMURRER TO EVIDENCE—*Demurree's Evidence.*

Upon a demurrer to evidence, in applying the rule laid down by this Court in *Heard* v. *Ry. Co.,* 26 W. Va. 455, (Syl. pt. 1), the demurree is not entitled to the benefit of evidence offered in the case by him, nor to any inferences to be drawn therefrom, which evidence is incompetent and inadmissible but which has been improperly admitted over the objection of demurrant. (p. 545).

Error to Circuit Court, Wayne County.

Action by the Huntington National Bank against Oliver S. Loar and others. Judgment for plaintiff. Defendant Loar brings error.

*Reversed.*

VINSON & THOMPSON and GEORGE J. McCOMAS, for plaintiff in error.

SIMMS & ENSLOW, for defendant in error.

MCWHORTER, JUDGE:

In July, 1897, Oliver S. Loar and George L. Vinson, applied to the Huntington National Bank for permission to renew a note of one thousand three hundred and three dollars and sixty-five cents made by George L. Vinson and M. B. Vinson, payable to the order of, and endorsed by, Oliver S. Loar. Subsequent to the prior renewal of said note Oliver S. Loar had transferred his real estate to Francis H. Loar, of which the

bank had obtained information. The president of the bank desired the endorsement on said note of said Frances H. Loar. Loar and Vinson said they would have her endorse it and then said they had authority from her to endorse her name: The president of the bank had O. K. Hayslip, an employe in the bank fill out a note for said amount, payable to the order of Oliver S. Loar and Frances H. Loar which was then and there endorsed by said Oliver S. Loar, and the name of Francis H. Loar also endorsed by him. On the 27th of July, 1897, the said George L. Vinson renewed a note for one hundred dollars, made by same makers, payable to the order of· Oliver S. Loar and· endorsed the name of said Loar and of Frances H. Loar thereon. Both notes were protested when they fell due. The Huntington National Bank brought its action of *assumpsit* on said notes against Oliver S. Loar, Frances H. Loar, George L. Vinson and M. B. Vinson. On the 23rd of May, 1898, the defendant, Frances H. Loar, appeared and put in the general plea of *non assumpsit,* and also her plea in writing of *non est factum,·* verified by her affidavit.· A jury was empaneled to try the issues. ˙When the plaintiff rested its case the defendant, Frances H. Loar moved to exclude from the jury all the evidence offered by plaintiff. The motion was overruled by the court and defendant excepted. Said defendant then demurred to the evidence in which the plaintiff joined. The jury then returned a verdict, subject to the court's ruling on the demurrer, in favor of plaintiff, assessing its damages at five hundred and sixty-four dollars, if the law should be for the plaintiff; but if the law should be for the defendant on the demurrer to the evidence then they found for the defendant, Frances H. Loar. On the 5th of October, 1900, the court overruled the demurrer to plaintiff's evidence and rendered judgment upon said verdict for the amount thereof and cost. Defendant obtained a writ of error to said judgment. It is conceded by plaintiff, and defendant that the only question to be determined here is as to the authority of Oliver S. Loar and George L. Vinson to endorse the name of Frances H. Loar upon the notes sued upon. The only evidence of the authority for such endorsement was the declarations of said Loar and Vinson, as testified to by the president of the bank, John Hooe Russell, who testified that when they appeared desiring to renew the notes they said they had authority to endorse her name. On cross examination he admitted

that they first told him when he was asking for her endorsement, that they would have her endorse it; but that they endorsed it that day without going away to see her anything about it, and did it in the bank at that time. When Russell was asked, what, if anything, was said as to their authority to endorse the name of Frances H. Loar upon the note the question was objected to. The court overruled the objection and allowed the question to be asked, to which defendant excepted. Witness answered that they said they had absolute authority to endorse her name, that it was done by her consent. Defendant moved to strike out said answer, which motion was overruled and defendant excepted. Witness was also asked what was said about the endorsement upon the one hundred dollar note of July 27, and answered "That was done by George Vinson and he said he had authority to do it." Defendant also moved to strike out this answer, which motion was overruled, and exception taken. Witness Okey K. Hayslip, testified that he was present when the large note was endorsed, that Mr. Oliver S. Loar endorsed his own name and also that of Frances H. Loar, on said note; and was then asked to state to the jury what conversation, if any, he heard, or had with Mr. Oliver S. Loar, in regard to the note at the time it was signed, and in regard to the endorsement on the back of it. He answered: "Mr. Russell asked Mr. Oliver S. Loar if he had authority to endorse his wife's name, and he said he had and Mr. George L. Vinson coroborated what Mr. Oliver S. Loar had said." Defendant's attorneys moved to strike out this answer and exclude the same from the jury, which motion was overruled, and defendant excepted. He further stated that the name of Frances H. Loar did not appear on the note before that. This is all the evidence that is adduced as to the authority of said Oliver S. Loar and George L. Vinson to endorse the name of Frances H. Loar, on the notes. In *Rosendorf* v. *Poling,* 48 W. Va. 621, (37 S. E. 555), Syl. pts. 1 and 2, are as follows: (1) "Where a person deals with an agent, it is his duty to ascertain the extent of the agency. He deals with him at his own risk. The law presumes him to know the extent of the agent's power; and, if the agent exceeds his authority, the contract will not bind the principal but will bind the agent." (2) "Neither the declarations of a man nor his acts can be given in evidence to prove that he is the agent of another." The president of the bank, Russell, had no right to

take the declarations of Loar and Vinson as to their right to use the name of Frances H. Loar, and in doing so it was his own risk, and he could hardly have been misled by their declarations, because they first told him that they would have her to make the endorsement; then afterwards endorsed her name themselves, without leaving the bank to see her about it. And he further said, "My impression is that I asked them to put it on there. I was anxious to have this paper paid, and they said they had the authority to sign her name to the note." The court should have ruled out the evidence of Russell, giving the declarations of Loar and Vinson, as to their authority for making the endorsements. At section 276, Mechem on Agency, it is said: "The law indulges in no bare presumptions that an agency exists; it must be proved or presumed from facts; that the agent can not establish his own authority, either by his representations or assuming to exercise it * * *, persons dealing with an assumed agent therefore whether the assumed agency be a general or a special one are bound at their peril to ascertain not only the fact of the agency, but the extent of the authority, and in case either is controverted the burden of proof is on them to establish it." And cases there cited. There is nothing here outside of the mere declarations of Loar and Vinson, which should not have been permitted to go to the jury, that any authority existed for them or either of them to endorse the name of Frances H. Loar, and before doing the act they had said enough to Russell to have satisfied him that they had no such authority, because they had said they would have her endorse the paper, and immediately endorsed it without seeing her. It is contended by defendant in error that Frances H. Loar by her silence and acquiescence ratified the act of the endorsement. On the 31st of December, 1897, Mr. Oney, the plaintiff's cashier, wrote to Mrs. Frances H. Loar, he says, calling her attention to the condition of the paper on which she was endorser and urging her to take some steps to pay it or renew; in reply to which he received a letter from Mrs. Loar, dated January 7, 1898, addressed to Huntington National Bank, as follows: "Your letter of December 31st received and must say in reply that Mr. Loar is in very bad health, not able to go away from home or attend to *business*. Mr. Lafayett and George Vinson have promised him that they will attend to his bank *business*." Mr. Oney further testified that he called on Mrs. Loar, either in January or the

first of February, 1898, and told her that he had come to see something about the paper of George L. Vinson and M. B. Vinson, that she and her husband were endorsers on in the bank, and that she told him that she never knew of her name being on that paper until she received the notice, and that Mr. George Vinson and Lafayett Vinson had been down to her house Christmas and said they would fix that paper up and she would not have any trouble about it. She was not informed in the notice of protest, as to how her name came upon the paper or who placed it there. In first A. & E., E. L. first edition, 443, "An act of ratification, in order to be sufficient must be something by which the party by relying upon it has been prejudiced." And at page 442, "A failure to disavow the acts of one who acted as an agent, but who had no appointment, and acted as a mere volunteer, will not be a ratification. In such case an express ratification is necessary." And cases cited. "Neglect to give notice of dissent does not always operate to ratify an act; that principle applies only to a case where the party neglecting to give such notice is benefitted or the other party injured thereby." *Whitmore* v. *Hamilton,* 51 Conn. 153. Loar and Vinson never having been appointed agents by Frances H. Loar for the purpose of said endorsements were mere volunteers and her failure to disavow their authority did not amount to a ratification. As far as the record shows Frances H. Loar received no part of the money for which the notes were given, nor any benefit therefrom, and she gained nothing by her silence or her failure to ratify the act of Loar and Vinson in endorsing her name, nor was the bank prejudiced by her action so far as appears from the record. When called upon by the cashier she disavowed the endorsement and denied any knowledge of her name being on the paper until notified of its protest. It is insisted by defendant in error that the defendant, Frances H. Loar being in the court room and hearing the testimony for plaintiff and failing to go upon the stand to give her testimony in the matter, the jury could infer the truth of the declarations of Loar and Vinson who assumed to be her agents. These declarations of Loar and Vinson were improper to go to the jury, and being all the evidence that was offered to prove the agency, and that evidence being inadmissible, and incompetent to prove the agency, it was not her duty to go upon the stand.

Plaintiff having wholly failed to make its case she had a right

to rely upon the law for her defense.   Defendant in error seems to rely upon the rule laid down in *Heard* v. *Ry. Co.,* 26 W. Va. 455, (Syl. pt. 1), "The rule for determining what facts shall be considered as established in cases of demurrer to evidence, when all of it is adduced by the demurree is, the court shall regard the demurrant as necessarily admitting by his demurrer not only the credit and truth of all the evidence but all inferences of fact that may be fairly deduced from it; and in determining the facts inferable from the evidence, inferences most favorable to the demurree will be made in cases where there is grave doubt which of two or more inferences shall be drawn. Unless there is a decided preponderance of probability or reason against the inference that might be made in favor of the demurree, such inference ought to be made in his favor."

This rule does not give the demurree the benefit of testimony offered in the case, which is incompetent and inadmissible and properly objected to when offered, nor any inferences to be drawn therefrom.   *Klinker* v. *Steel and Iron Company,* 43 W. Va. 219, (Syl. pt. 3), "When the evidence is so clearly deficient as to give no support to a verdict for plaintiff, if so rendered, the court should exclude the evidence from the jury."   The demurrer to the evidence should have been sustained and judgment rendered for defendant.   The judgment of the circuit court is therefore reversed and the demurrer to the evidence sustained and judgment for the defendant.

*Reversed.*